

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK                    x
                                                :
RUBEN VICTOR CENTENO-BERNUY, WALDO              :
CENTENO-BERNUY, AQUILES MAURO GALINDO-          :
BUENDIA, and JOEL EFRAIN PECHO-VIVANCO,         :    Civ. No. 03-CV-457(A)(Sr)
                                                :
                    Plaintiffs,                 :
                                                :
              -against-                         :
                                                :
DONALD A. PERRY,                                :
                                                :
                    Defendant.                  :
                                                x

PLAINTIFFS' MEMORANDUM OF LAW
IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT

Introduction

Plaintiffs Ruben Victor Centeno-Bernuy, Waldo Centeno-Bernuy, Aquiles Mauro

Galindo-Buendia, and Joel Efrain Pecho-Vivanco move this Court for summary judgment

pursuant to Fed. R. Civ. P. 56 on their claim of retaliation under the Fair Labor Standards

Act (FLSA).    Defendant Donald A. Perry's acts of retaliation against the plaintiffs are

undisputed.[1]    The only issue before the Court is a legal one: whether Perry's acts

constitute retaliation under the FLSA.

The plaintiffs filed the instant litigation against Perry on June 16, 2003, alleging that

Perry unlawfully retaliated against them in violation of federal law for having filed a lawsuit

against Perry's family members and former business.[2]    The plaintiffs thereafter sought a

preliminary injunction enjoining any further retaliation; the Court entered an injunction

---

[1] *See* Statement of Undisputed Facts pursuant to Fed. R. Civ. P. 56 and W.D.N.Y. Local Rule
56.1(a).

[2] This case is <u>Centeno-Bernuy, *et al.* v. Becker Farms, *et al.*</u>, Civ. No. 01-CV-839(A)(Sr),
hereinafter referred to as the "Becker Farms litigation."

against Perry on December 18, 2003.    Because Perry deliberately and continuously violated the terms clearly set forth in the Court's Order, the plaintiffs moved the Court to find Perry in contempt.   The Court referred the matter to the United States Attorney, who prosecuted Defendant for criminal contempt, obtaining a conviction.  See USA v. Perry, Case No. 04-misc-cr-111 A.   Perry has deliberately and flagrantly violated the Court's preliminary injunction up to the present day, as detailed in the Statement of Undisputed Facts.    Thus, the plaintiffs move the Court for summary judgment as to Perry's liability for retaliation in violation of the FLSA.[3]  The plaintiffs seek permanent injunctive relief. [4]

Factual Background

In this Court's December 18, 2003 Order, Perry was restrained and enjoined:

> from contacting or communicating with, in any way, any local, state or federal government official or agency, including but not limited to the United States Attorney General, the United States Attorney, the New York State Attorney General, the United States Department of Labor, the New York State Police, the INS, the United States Department of Homeland Security, and the United States State Department, with regard to the plaintiffs Ruben Victor Centeno-Bernuy, Waldo Centeno-Bernuy, Aquiles Mauro Galindo-Buendia and Joel Efrain Pecho-Vivanco, and their attorneys; and  . . . from any further retaliation, in any form, against the plaintiffs.

(December 18, 2003 Order at 20-21.)     Perry has continually violated the Court's preliminary injunction in his repeated actions, as detailed in the Statement of Undisputed Facts (SUF), submitted pursuant to Fed. R. Civ. P. 56 and W.D.N.Y. Local Rule 56.1(a).

I.    Contact with state and government agencies about the plaintiffs and their counsel

---

[3]  In the Becker Farms litigation, the plaintiffs are not pursuing their claim under the Migrant and Seasonal Agricultural Worker Protection Act (AWPA), which was dismissed on summary judgment.  In that vein, the plaintiffs are not pursuing the retaliation claim under the AWPA in the instant litigation.

[4]  In the event that their claims for injunctive relief are denied, plaintiffs reserve the right to seek other forms of relief available under the FLSA, including damages.

Perry has contacted and communicated with state and federal government agencies about the plaintiffs and their counsel in direct violation of the preliminary injunction. On February 26, 2004, Perry contacted New York Assistant Attorney General C. Michael Higgins complaining that the plaintiffs' counsel, Farmworker Legal Services of New York (FLSNY) was using the New York State Attorney General Buffalo office as a "sanctuary" for "illegal aliens" and that FLSNY was "smuggling illegal aliens" (SUF ¶ 12). In a phone call with the plaintiffs' counsel in February 2004, Perry said that he has had extensive contact with government officials regarding the "illegal activities" of the plaintiffs' counsel and indicated that he is "investigating" their "illegal activities" – including "trafficking and smuggling." (SUF ¶ 13). In this same phone call, he said that he believes that this Court's preliminary injunction does not enjoin him from broadcasting throughout New York his view that FLSNY engages in the smuggling and trafficking.

On March 4, 2004, Perry faxed an undated "complaint against attorneys" to the FLSNY office, listing alleged ethical violations by the plaintiffs' counsel. Perry apparently submitted the complaint to the New York State "Attorney Grievance Committee" (SUF ¶ 18). He accused the plaintiffs' counsel of knowingly misrepresenting the plaintiffs' immigration status to the Court in the course of the Becker Farms litigation and suggests that the plaintiffs' counsel are committing a crime by aiding the plaintiffs. In addition, in a March 10, 2004 fax to the plaintiffs' counsel, Perry indicated that he had spoken with the "Department Heads" of the New York State Department of Labor about the plaintiffs' counsel. Perry also stated that he spoke with Assemblyman Nesbitt and Senator Magiarz and that they did not support the alleged efforts of the plaintiffs' counsel to unionize farmworkers (SUF ¶ 21).

On September 11, 2006, Perry sent a fax to Federal Public Defender Joseph B. Mistrett, in which he referenced the terrorist attacks of September 11, 2001, stating that he "did not hesitate to take up [his] government's call for aid" and noting that the government was "combating terrorist organizations (FARC, Tupac Amaru, and the Sendero Luminoso)." (SUF ¶ 33).  Perry also stated that the plaintiffs were "aided, abetted, and harbored by a bunch of seditious crimmigrant transnationals!!" and made known his intention to spend the remaining time before his court date of October 27, 2006, "communicating [his] innocence" to the Public Defender's office by fax.  Perry attached a copy of a fax sent to Federal Public Defender Marianne Mariano, also on September 11, 2006, in which he charged the plaintiffs' counsel as guilty of "a federal crime"and "treason".

In September of 2006, Perry sent three other faxes to government officials – one to Assistant New York Attorney General C. Michael Higgins and two to United States Attorney Terrance Flynn.  The faxes called Flor Aber the plaintiffs' "mule," and the plaintiffs' counsel Dan Werner the plaintiffs' "coyote." (SUF ¶¶ 34, 36, 37).  His fax to Mr. Flynn accused plaintiff Ruben Centeno-Bernuy of creating a "crimmigration cell."  In April of 2007, Perry contacted two other government officials.  He sent a fax to Public Defender Marianne Mariano and to United States Representative Louise Slaughter.  In each, he accused FLSNY of trafficking.  In the fax to Rep. Slaughter, he said FLSNY and the plaintiffs' other counsel – Steve Cole and the Farmworker Law Project – had "aided and abetted" the plaintiffs in "absconding."  (SUF ¶¶ 39, 40).

II.    Contact with community organization members about the plaintiffs and their counsel

Perry is not only contacting government officials regarding the plaintiffs and their counsel, but is also harassing various community members who are supportive of the work

of the plaintiffs' counsel in litigating employment and civil rights cases on behalf of farmworkers. For example, in February 2004, Perry called Emma Kreyche, an employee of Rural and Migrant Ministry in Poughkeepsie, NY, accusing her of being an "agent" for one of the plaintiffs' attorneys and FLSNY, who he said were involved in illegal smuggling and trafficking of immigrants. (SUF ¶ 11). Perry told Ms. Kreyche that she was engaging in a felony by "harboring, aiding and abetting illegal aliens" and informed her that her organization and she could be sued for this. He compared her to Flor Aber, whom he said lost her job because she acted as an "agent." He told her that a presentation Ms. Kreyche had given was tape-recorded and that he had attended a meeting with growers and government officials.

Perry's harassment of Flor Aber, former employee of Rural Opportunities, Inc. (ROI), has continued beyond the earlier accusations prior to the preliminary injunction and the contempt order. In February 2005, Perry discovered that Flor Aber worked at Hispanics United in Buffalo, and called her at work several times each day for several weeks, even though she instructed him to stop calling. Each time he phoned, he called her a "mule" and a "trafficker of illegal aliens." He also said she brought the individuals responsible for the September 11, 2001 terrorist attacks into the country. (SUF ¶ 26 ). In or about February 2005, Perry also contacted Paula Rosner, the Executive Director of Hispanics United, telling her that a public meeting concerning migrant farmworkers, scheduled to occur at their facility, could not go forward. Perry told her that her employee, Flor Aber, was "dangerous," was "involved with terrorist activities," "was a Communist" and was "some kind of dissident." (SUF ¶¶ 27-28). In April 2005, Perry called Ms. Aber at home and accused her of being a "mule" and a "trafficker of illegal aliens" and asked her questions

about her marriage (SUF ¶ 29). Even though Ms. Aber obtained an unlisted home number, Perry tracked down her home number and called her at home every day for two months, September and October 2005. He continued with the same accusations and also questioned her about her responsibility for the alleged terrorist plot to attack New York City's subways, based on a news report published in October 2005 (SUF ¶¶ 31-2).

III.     <u>Harassment and intimidation of the plaintiffs' counsel</u>

Perry has also continued to harass and attempt to intimidate the plaintiffs' counsel by continuing to generate his usual outlandish accusations that they are traffickers and smugglers of immigrants and engaged in illegal activities. Some of Perry's communications accuse the plaintiffs' counsel of "seditious actions," of "aiding and abetting" and "harboring [and] shielding" the plaintiffs, of "duping the courts and destroying New York state agriculture" and of being guilty of "treason." (*See, e.g.* SUF ¶¶ 13, 15, 17, 19, 38). As with his accusations that the plaintiffs are terrorists, Perry's allegations that counsel are engaging in these illegal acts are baseless. [5]

Perry has also contacted the plaintiffs' counsel about other litigation that counsel have pursued on behalf of agricultural workers – litigation that is entirely unrelated to Perry or the Becker Farms litigation. On March 1, 2004, Perry told the plaintiffs' counsel that he was going to report to immigration authorities four plaintiffs in a Sullivan County case

---

[5] Counsel for the plaintiffs recognize that complaining about Perry's constant contact with their offices might be considered unfair – if Perry had been attempting to raise legitimate issues relevant to this lawsuit. Counsel also note that because Perry is proceeding *pro se*, they have treated him with significant leeway. However, given the sheer volume of telephone calls and faxes, and the fact that the vast majority – if not all – of these faxes and calls are inflammatory and have no relevance whatsoever to this lawsuit, Perry's contacts have been unnecessary and border on harassment.

Additionally, plaintiffs have designated a lead counsel (the undersigned) to communicate with Defendant on any and all issues relating to this lawsuit. Nevertheless, Defendant has insisted harassing all of plaintiffs' attorneys, even those designated as being in supporting roles.

litigated by FLSNY (SUF ¶ 14). In his correspondence with the plaintiffs' counsel, Perry makes repeated reference to this litigation and has indicated to Ms. Kreyche that he has spoken with the defendant in that case more than once. (SUF ¶ 13).

Argument

I.    Standard of Review for Summary Judgment

A court may enter summary judgment if the submissions of the parties "show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A material fact is one that "might affect the outcome of the suit under the governing law." *Anderson v Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see Catanzaro v. Weiden*, 140 F.3d 91, 93 (2d Cir. 1998). A dispute regarding a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248; *see Bryant v. Maffucci*, 923 F.2d 979 (2d Cir.), *cert. denied*, 502 U.S. 849 (1991). Once the moving party has met its burden of "demonstrating the absence of a genuine issue of material fact, the nonmoving party must come forward with enough evidence to support a jury verdict in its favor." *Bryant*, 923 F.2d at 982. In addition, the motion "will not be defeated merely upon a 'metaphysical doubt' concerning the facts, or on the basis of conjecture or surmise." *Bryant*, 923 F.2d at 982. A party seeking to defeat a motion for summary judgment "must do more than make broad factual allegations and invoke the appropriate statute. The [party] must also show... that there are specific factual issues that can only be resolved at trial." *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995).

II.   The Court Should Grant Plaintiffs Summary Judgment

No material facts are in dispute in this case.[6]   The plaintiffs are entitled to a

judgment as a matter of law on their claim of retaliation in violation of the FLSA.  As this

Court stated in its December 18, 2003 Order, "[t]he FLSA provides that it is 'unlawful for

any person...to discharge or in any other manner discriminate against any employee

because such employee has filed any complaint or instituted or caused to be instituted any

proceeding under [the FLSA]...' 29 U.S.C. § 215(a)(3)" Order at 12; 302 F.Supp.2d 128,

135.  Moreover, the Court's Order provided that,

> [t]o establish a *prima facie* claim of retaliation in violation of the FLSA, a
> plaintiff must show "(1) participation in protected activity known to the
> defendant; (2) an employment action disadvantaging the plaintiff; and (3) a
> causal connection between the protected activity and the adverse
> employment action." *Lai v. Eastpoint Int'l, Inc.*, 2000 U.S. Dist. LEXIS 12502,
> 2000 WL 1234595, *3 (S.D.N.Y. Aug. 31, 2000) (citations omitted).

Order at 14; 302 F.Supp.2d at 136.

This Court has established that the plaintiffs have engaged in a protected activity

known to Perry by filing the Becker Farms litigation and that Perry knew of the lawsuit

within a few days it was filed. Order at 14; 302 F.Supp.2d at 136. In addition, Perry has

continued to take actions which "disadvantage" the plaintiffs.  *See Lai v. Eastpoint Int'l,*

*Inc.*, 2000 WL 1234595, *3 (S.D.N.Y. Aug. 31, 2000).  This Court found that "reporting the

plaintiffs to the INS and making baseless allegations to the government that plaintiffs are

terrorists, constitute an adverse employment action." Order at 14, 302 F.Supp.2d at 136.

Perry's actions after the preliminary injunction to the present day continue to similarly

disadvantage the plaintiffs.  Finally, a causal connection clearly exists between the

---

[6] *See* Plaintiffs' Statement of Undisputed Facts pursuant to Fed. R. Civ. P. 56 and W.D.N.Y. Local
Rule 56.1(a).

plaintiffs' case against Becker Farms and Perry's ongoing retaliatory actions. At the preliminary injunction hearings, as this Court observed in its Order, "Perry expressed concern that the Becker Farms litigation may result in Becker Farms having to declare bankruptcy and him losing his home. This concern is his true motivation behind his actions." Order at 6-7; 302 F.Supp.2d at 133. Additionally, Perry's communications and actions after the preliminary injunctions evince that the plaintiffs' claims in the Becker Farms litigation are at the root of his retaliation. It is apparent that Perry continues to make these deliberate attacks on the plaintiffs, their counsel, potential witnesses, and other parties in unrelated actions for the purpose of preventing or dissuading the plaintiffs from going forward with the Becker Farms litigation.

In sum, no material facts are in dispute. No evidence exists "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. Moreover, no "specific factual issues" exist that "can only be resolved at trial." *Colon v. Coughlin*, 58 F.3d at 872. The plaintiffs are entitled to summary judgment on their claim of retaliation in violation of the FLSA.

III.    Permanent Injunctive Relief is Appropriate

A.    Legal Standard for Permanent Injunction

"The standard for a permanent injunction is similar to the standard for a preliminary injunction: (1) irreparable harm and (2) success on the merits." *Nextel Partners, Inc. v. Town of Amherst, N.Y.*, 251 F.Supp.2d 1187, 1200 (W.D.N.Y. March 4, 2003). For a permanent injunction, "the plaintiff must establish actual success, rather than merely a likelihood of success on the merits." *Lusk v. Vill. of Cold Spring*, 475 F.2d 480, 485 (2d Cir. 2007)(quoting *Amoco Prod. Co. v. Vill. of Gambell*, 480 U.S. 531, 546 n.12 [1987]). In its

Order issuing the preliminary injunction, the Court found that the plaintiffs had "demonstrated a likelihood of success on the merits of their FLSA" retaliation claim. Order at 12; 302 F.Supp.2d at 135. Now, the plaintiffs are entitled to judgment as a matter of law on their retaliation claim and have, thus, demonstrated *actual* success on the merits.

The Supreme Court recently reiterated the four-factor test for permanent injunctive relief: "A plaintiff must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *eBay Inc. v. MercExchange, L.L.C.,* 547 U.S. 388, 126 S. Ct. 1837, 1839, 164 L. Ed. 2d 641 (2007).

B.    Permanent Injunctive Relief is Warranted

Irreparable Injury

The plaintiffs have suffered irreparable harm. The Courts have long recognized that the "chilling effect of retaliatory activity can constitute irreparable harm." *Garcia v. Lawn*, 805 F.2d 1400, 1405-06 (9th Cir. 1986)(*citing Holt v. Continental Group*, 708 F.2d 87, 91 (2d Cir. 1983). As this Court's Order states:

> Unchecked retaliation, no matter its form, subverts the purpose of the FLSA, the MSAWPA and other federal employment laws. Indeed the chilling effect of retaliation on migrant farmworkers has been well-documented. *See Beliz v. W.H. McLeod & Sons Packing Co.*, 765 F.2d 1317, 1332 (5th Cir. 1985)("Further, the legislative history of the [MSAWPA] notes that farm workers who attempt to assert their rights must overcome a general background of fear and intimidation caused by the widespread practice of retaliation against those who complain about violations.")

Order at 11-12; 302 F.Supp.2d at 135.

Perry's continued contact with government officials and agencies about the plaintiffs and their counsel – which he was specifically enjoined from engaging in – has harassed and intimidated the plaintiffs, thereby subverting the purpose of the FLSA. His baseless accusations of the plaintiffs as terrorists is inflammatory and harmful, especially in the climate of fear in which many in this nation live. Such accusations are clearly intended to make the plaintiffs fearful of government authorities in their pursuit of their claims in the Becker Farms litigation. In the same vein, Perry's countless attacks on a potential witness, Flor Aber, have intimidated her and haunted her. He tracked down her unlisted home telephone number and called her daily for two months. Similarly, the harassing phone calls to Emma Kreyche have caused her to refrain from being involved in any proceeding relating to Perry. Such actions by Perry deter potential witnesses from participating in the Becker Farms litigation. In addition, Perry's groundless attacks on the plaintiffs' counsel in his communications with government officials and agencies has caused counsel to spend invaluable time addressing the attacks – time that could be used to pursue the Becker Farms litigation.

<u>Monetary Damages are Inadequate</u>

A permanent injunction is appropriate and necessary because monetary relief will not adequately compensate the plaintiffs for the harm they have suffered. Monetary damages will not adequately compensate them for Perry's assault on their efforts to enforce their rights under the FLSA in the Becker Farms litigation. Neither will monetary damages sufficiently remedy the harm caused by Perry's efforts to malign them as "terrorists" and to threaten them with criminal sanctions. Monetary damages will not make

up for the time and energy Perry has taken away from the plaintiffs' counsel's work in the Becker Farms litigation.

As this Court notes in its December 18, 2003 Order, "[h]arm which is not capable of being fully remedied by money damages is irreparable harm." Order at 10; 302 F.Supp.2d at 134-135 (citing Tucker Anthony Realty Corp. v. Schlesinger, 888 F.2d 969, 975 [2d Cir. 1989]).

### Balance of hardships tips in the plaintiffs' favor

This Court concluded in its December 18, 2003 Order that "the balance of hardships tips decidedly in plaintiffs' favor." Order at 16; 302 F.Supp.2d at 138. Now, even more so, the balance of hardships tips in favor of the plaintiffs. The plaintiffs wills suffer further harm if the Court does not permanently enjoin Perry. Prosecuting the Becker Farms litigation will continue to be difficult, without permanent injunctive relief. Perry's accusations could lead to criminal and administrative action against the plaintiffs, without permanent injunctive relief. On the other hand, Perry will suffer no hardship whatsoever if he is prevented, by a permanent injunction, "from continuing to repeat his baseless claims about the plaintiffs to the authorities." (Order at 16; 302 F.Supp.2d at 137).

### Public interest would be served with a permanent injunction

The final factor of the Supreme Court's test for permanent injunctive relief has also been met here. The public interest would indeed be served with a permanent injunction against Perry in place. The public interest is not served when retaliation goes unchecked – when a person is allowed to harass, intimidate, threaten, and accuse other persons when they seek to enforce their rights under the law. It not only affects the individual person bringing the claim, but affects the public as a whole. This Court stated in its December 18,

2003 Order: "[it] is well established that the anti-retaliation provision of the FLSA is critical to the entire enforcement scheme of the federal wage and hour law. *See, e.g., Mitchell v. Robert DeMario Jewelry, Inc., 361 U.S. 288, 292 (1960); Equal Employment Opportunity Comm'n v. Locals 14 and 15, Int'l Union of Operating Eng'rs, 438 F.Supp. 876, 879-880 (S.D.N.Y. 1977).*" Order at 11; 302 F.Supp.2d at 135. The public interest is most definitely served when wage and hour laws are respected, and if violated, can be enforced.

Conclusion

Based upon the foregoing, plaintiffs respectfully request that their motion for summary judgment be granted, and that this Court enter a permanent injunction enjoining defendant Perry:

> from contacting or communicating with, in any way, any local, state or federal government official or agency, including but not limited to the United States Attorney General, the United States Attorney, the New York State Attorney General, the United States Department of Labor, the New York State Police, the INS, the United States Department of Homeland Security, and the United States State Department, with regard to the plaintiffs Ruben Victor Centeno-Bernuy, Waldo Centeno-Bernuy, Aquiles Mauro Galindo-Buendia and Joel Efrain Pecho-Vivanco, and their attorneys; and from any further retaliation, in any form, against the plaintiffs.

Dated: April 4, 2008       **LECLAIR KORONA GIORDANO COLE** LLP

By    s/Steven E. Cole
       Steven E. Cole, Esq.
*Attorneys for Plaintiffs*
150 State Street, Suite 300
Rochester, New York 14614
Telephone (585) 327-4100
E-mail: scole@leclairkorona.com

**FARMWORKER LEGAL SERVICES OF
NEW YORK, INC.**
Molly L. Graver, Esq.
*Attorneys for Plaintiffs*
1187 Culver Road
Rochester, New York    14609
Telephone:  (585) 325-3050
E-mail: mgraver@wnylc.com

**TO:**   Donald Perry
3760 Quaker Road
Gasport, New York    14067